UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAI A. GOULSBY,

                Plaintiff,

   v.

CAPTAIN GEORGE EATON, SGT. TERESA BECKER, CPO VERLENE ABERCROMBIE,

                Defendants.

No. C15-5124 RBL-KLS

**REPORT AND RECOMMENDATION**
**Noted For:  April 29, 2016**

Defendants George Eaton, Teresa Becker, and Verlene Abercrombie[1] move for summary judgment dismissal of Plaintiff Rai A. Goulsby's complaint pursuant to Fed. R. Civ. P. 56.  Dkt. 19.  At the time of filing his 42 U.S.C. § 1983 complaint, Mr. Goulsby was incarcerated at the Stafford Creek Corrections Center (SCCC).  On March 30, 2015, plaintiff notified the Court that he was no longer in custody.  In his complaint, Mr. Goulsby seeks relief against the defendants for events which allegedly occurred while Mr. Goulsby was a pretrial detainee at the Thurston County Jail from early November 2012 until January 9, 2013.[2]  Dkt. 11.  Specifically, he claims that defendants failed to ensure his safety and denied him the right to exercise, receive mental health care, attend religious services, and access the telephone to call his lawyer.  *Id.*  He also

---

[1] Although the Thurston County Jail is also listed as a defendant on the Court's docket and in defendants' filings, the complaint does not name the jail as a separate party.  Rather, Mr. Goulsby appears to have named the jail only as the place of employment of the individually named jail employees.

[2] *See* Dkt. 20, Declaration of Corrections Sergeant Chris Dhuyvetter.

REPORT AND RECOMMENDATION- 1

claims that he was denied due process when he was held in special housing for 30 days following his infraction hearing where he received a suspended sentence. *Id.*

Defendants filed their motion for summary judgment on February 19, 2016, within the court-ordered dispositive motions deadline and after the court-ordered discovery deadline had passed. Plaintiff has filed no papers in opposition to the motion. According to defendants, plaintiff has filed no documents, pleadings, or pursued any discovery since the filing of his complaint. The Court recommends that defendants' summary judgment motion be granted as to all claims except plaintiff's claims that he was denied due process when he was held in special housing for 30 days following his infraction hearing and was denied access to religious services.

**STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir.1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990).

REPORT AND RECOMMENDATION- 2

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49, 106 S.Ct. 2505. A "material fact" is one which "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. 2505. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir.1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir.2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## STATEMENT OF FACTS

In his verified complaint, Mr. Goulsby states that he was an inmate at the Thurston County Jail on November 8, 2012. Dkt. 11, ¶. 1.1. Mr. Goulsby alleges that at his request, he was moved from minimum security (Post 6), where he had been for only 36 hours, to a medium security unit (F-2) "because of safety concerns." *Id.* Mr. Goulsby does not provide any facts to support this conclusion that there were "safety concerns."

Mr. Goulsby alleges that on December 10, 2012, Verlene Abercrombie told him that he was moving back to Post 6. When Mr. Goulsby explained the "full extent of the issues that he had already experienced during the time he was there," she responded "I don't care, either you

move or go to D-tank." Mr. Gouslby was then taken to the "Special Housing Unit (D-Tank)", which he also describes as a "Maximum Security Unit." *Id.*, ¶ 1.2

On December 12, 2012, Mr. Goulsby was taken to a disciplinary hearing for an MJ-25 infraction for refusing a housing assignment, where he was found guilty and received a sanction of 7 days on lockdown suspended for 30 days dependent on his not receiving an infraction for a thirty day period. Mr. Goulsby alleges that Hearing Officer Wilsbach told him that his medium custody would be restored and that he would be moved that day or the next to a medium housing unit. *Id.*, ¶¶ 1.3, 1.4.

Seven days after he was promised that he would be moved, Mr. Goulsby asked Corrections Officer Sullivan why he was still in "special housing." She told him that a "Unit Team Classification was held by" Defendants Becker and Abercrombie and it was decided he should remain in "special housing" for the next thirty days. Mr. Goulsby states that he was not notified of this "hearing," given an option to attend or given a copy of the findings of the hearing results. He states that this special housing is "solitary confinement like conditions" and he was only allowed "1-2 hours out of cell." *Id.* ¶ 1.5

Plaintiff submitted a grievance on December 23, 2012 stating he was getting no recreation/outside yard time. He claims he was confined to a cell 23 hours per day with two other inmates, one of whom was sleeping on the floor. He claims that medium security inmates were getting one hour of outside yard recreation every day. Defendant Becker told him that Defendant Eaton was addressing the issue but, according to plaintiff, the issue was never addressed and the condition did not change. *Id.*, ¶ 1.6.

On December 23, 2012, plaintiff submitted a grievance for not being permitted to attend Christian services even though medium security inmates were allowed to attend Christian

REPORT AND RECOMMENDATION- 4

services twice per week.  According to plaintiff, Defendant Becker apologized and Defendant Eaton submitted "a written promise" that D-unit medium security inmates (Mr. Goulsby included), would be allowed to attend church services per facility policy and schedule."  Plaintiff states that this never occurred.  *Id.*, ¶ 1.7.

Plaintiff alleges that he submitted multiple kites because his requests to see a mental health care provider had been ignored.  He claims that he has a history of severe mental health problems.  Defendant Becker told him that the facility's mental health staff was on leave and was attending to crisis inmates only.  Plaintiff disputes this, claiming that he witnessed several inmates "with mental health needs similar to his received the care that they needed."  *Id.*, ¶ 1.8.

Plaintiff also alleges that the entire time he was in D-Unit he was denied access to legal calls.  *Id.*, ¶ 1.9.  According to the Declaration of Sergeant Chris Dhuyvetter, plaintiff was given access to the telephone and in fact, made a total of 54 telephone calls between December 2, 2012 and January 9, 2013.  Dkt. 20, Dec. of Dhuyvetter, Ex. A.

## DISCUSSION

Plaintiff brings his federal claims under 42 U.S.C. § 1983.  To prove a violation under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To hold a defendant liable for damages, the wrongdoer must personally cause the violation.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  The inquiry into causation must

REPORT AND RECOMMENDATION- 5

be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Id*. Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Id*. at 634 (citation omitted). A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.2011) (*citing Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

Because he was a pretrial detainee at the time of his incarceration, Mr. Goulsby's constitutional claims arise from the due process clause of the Fourteenth Amendment and not from the Eighth Amendment's prohibition against cruel and unusual punishment. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986) (*citing Bell v. Wolfish*, 441 U.S. 520, 573 n. 16 (1979)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir.2014). "[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees ... have not been convicted" of a crime. *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir.1987); *Bell*, 441 U.S. 520 (pretrial detainees)).

**A.      Conditions of Confinement**

    **1.      Failure to Protect**

Mr. Goulsby was initially moved from a minimum security unit (Post 6) to a medium security unit (F-2) at his request based on unidentified "safety concerns." This request was granted and as a result, he spent only 36 hours in Post 6. Approximately one month later, Defendant Abercrombie told Mr. Goulsby that he was being moved back to Post 6 and Mr. Goulsby protested, telling Defendant Abercrombie the "the full extent of the issues that he had

REPORT AND RECOMMENDATION- 6

already experienced during the time he was there." Defendant Abercrombie responded, "I don't care, either you move or go to D-Tank." Dkt. 11, at ¶ 1.2. Mr. Goulsby was taken to D-Tank and he remained there for his disciplinary hearing (for refusing a cell assignment) and for at least 30 days thereafter. Mr. Goulsby contends that the Thurston County Jail staff has a duty to ensure the safety of all inmates that they house and that Defendant Abercrombie failed in her duty to investigate and protect Mr. Goulsby rights. *Id.*, at ¶ 1.2.

It appears that the constitutional right at issue in this case is the right to be free from violence at the hands of other inmates, although there are no factual allegations contained in the complaint to indicate that Mr. Gouslby was in fact in danger from anyone. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because corrections officers have "stripped [the inmates] of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The right to be free from violence at the hands of other inmates extends to inmates housed in state or local custody. *See Cortez v. Skol*, 776 F.3d 1046, 1049–50 (9th Cir. 2015) (recognizing a claim based on *Farmer* brought by a state prisoner).

As previously noted, because Mr. Goulsby was a pretrial detainee, his right to be free from violence at the hands of other inmates arises from the Fourteenth Amendment rather than the Eighth Amendment. *See Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir.2002). Despite those different constitutional sources, the "deliberate indifference" test is the same for pretrial detainees and for convicted prisoners. *Clouthier,* 591 F.3d at 1242 ("neither [the Ninth Circuit] nor the Supreme Court ha[s] departed from the standard set forth in *Bell* and *Farmer* for considering pretrial detainees' claims that government officials violated their Fourteenth Amendment rights by failing to prevent harm"). Thus, Mr. Goulsby is required to show by a

REPORT AND RECOMMENDATION- 7

preponderance of the evidence that (1) he faced a substantial risk of serious harm, (2) the defendants were deliberately indifferent to that risk, and (3) the defendant's failure to act was a proximate cause of the harm that he suffered. *See Farmer*, 511 U.S. at 847. A defendant is deemed "deliberately indifferent" to a substantial risk of serious harm when he knew of the risk but disregarded it by failing to take reasonable measures to address the danger. *Id*.

The facts alleged in Mr. Goulsby's complaint are insufficient to state a failure to protect claim. The facts establish only that he was granted a change in housing after he requested it from jail staff due to "safety concerns." However, the circumstances prompting his request are completely unknown. Mr. Goulsby alleges that he told Defendant Abercrombie of the "the full extent of the issues that he had already experienced during the time he was there" but whatever Mr. Goulsby told Defendant Abercrombie is not known and whatever Mr. Goulsby experienced during the 36 hours while he was in Post 6 is also unknown. In fact, Mr. Goulsby was not moved back to Post 6, but was moved to D-Tank. Mr. Goulsby makes no allegations regarding safety concerns in D-Tank.

Mr. Goulsby has failed to present any genuine issue of material fact as to an essential element of his claim that Defendant Abercrombie or any other defendant was deliberately indifferent to a substantial risk of harm. There is no evidence upon which a reasonable jury could conclude that a substantial risk of serious harm to Mr. Goulsby existed, that Defendant Abercrombie was both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that she in fact drew that inference, and that her failure to act was a proximate cause of any harm suffered by Mr. Goulsby.

//

//

REPORT AND RECOMMENDATION- 8

### 2.      **Inadequate Recreation/Exercise Time**

Mr. Goulsby alleges that he was confined to the "special housing unit/maximum security unit" for 23 hours a day. Dkt. 11, ¶ 1.6. The Court notes, however, that he states he received "1-2 hours out of cell." *Id.* ¶ 1.5. Mr. Goulsby filed a grievance on December 23, 2012 complaining of his not receiving any "recreation/outside yard time." Defendant Becker responded to one of Mr. Goulsby's grievances, stating "Defendant Eaton is addressing the issue." *Id.* However, according to Mr. Goulsby, the condition never changed and the "willful denial" of his right to exercise continued. *Id.*

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (*citing Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir. 1998) (prison officials may restrict outdoor exercise on basis of weather, unusual circumstances, or disciplinary needs); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010).

A temporary denial of outdoor exercise with no medical effects, however, is not a substantial deprivation. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (21 day deprivation of outdoor activities is not a serious deprivation absent medical effects); *see also, Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010) (temporary denial of outdoor exercise with no medical effects is not a substantial deprivation), *cert. denied*, 131 S. Ct. 1465 (2011). Conversely, a six week denial of recreation may meet the objective test for serious deprivation regardless of effects. *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (2000) (*citing Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995) (45 minutes of exercise per week for 6 ½ weeks may also meet the objective standard of serious deprivation). As noted in *Lopez*, "[t]he clear implication of

REPORT AND RECOMMENDATION- 9

*May* is that temporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects."

The facts alleged in the complaint are not disputed. Mr. Goulsby was in a special housing unit for less than 30 days and during that time he has was not provided any recreation/outside yard time. This, however, is clearly a short term deprivation and Mr. Goulsby has not provided any facts to show that this deprivation had any medical effect. Based on Ninth Circuit case law, Mr. Goulsby has failed to state a constitutional violation and defendants are entitled to summary judgment on this claim.

### 3. Access to Mental Health Care

"The requirements for mental health care are the same as those for physical health care needs." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner's medical treatment. *Id*. at 104–5; *see also Broughton v. Cutter Labs*., 622 F.2d 458, 459–60 (9th Cir.1980). To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to

REPORT AND RECOMMENDATION- 10

contemporary standards of decency.  *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059.  Second, the prison official must be deliberately indifferent to the risk of harm to the inmate.  *Farmer*, 511 U.S. at 834.  An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.  In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known.  *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.1995).

Here, Mr. Gouslby alleges that his "pleas to see the mental health provider were being ignored."  He alleges that he has a history of severe mental health problems but when he arrived at the jail he "was doing well and his problems were in remission."  Dkt. 11, at ¶ 1.8.  There are no other allegations nor is there any evidence that Mr. Goulsby suffered from symptoms related to his mental illness or that he in fact suffered from any serious medical need while he was housed at the Thurston County Jail, or that any named defendant knew of and was deliberately indifferent to that need.  Mr. Goulsby names only Defendant Becker in this claim and Defendant Becker's only involvement appears to have been to advise Mr. Goulsby that mental health staff were on leave and only crisis inmates were being seen at the time.  Although Mr. Goulsby alleges that he does not believe this is accurate as he saw other inmates "with mental health needs similar to his received the care that they needed," Mr. Goulsby provides no explanation or proof of what those mental health needs were or how the needs of others were similar to his own.

Mr. Goulsby has failed to present any genuine issue of material fact as to an essential element of his claim that any defendant was deliberately indifferent to a substantial risk of harm to his mental health.  There is no evidence upon which a reasonable jury could conclude that a substantial risk of serious harm to Mr. Goulsby existed, that any defendant was both aware of

REPORT AND RECOMMENDATION- 11

facts from which the inference could be drawn that a substantial risk of serious harm existed and that they in fact drew that inference, and that their failure to act was a proximate cause of any harm suffered by Mr. Goulsby.  The defendants are entitled to summary judgment on this claim.

**B.      First Amendment**

    **1.       Religion**

Mr. Goulsby claims that while he was in the special housing unit he was not "permitted to attend religious (Christian) services."  Dkt. 11, ¶ 1.7.  Mr. Goulsby also claims that, in response to his grievance, he received an apology for the oversight from Theresa Becker and a "written promise" from Captain Eaton that inmates in his unit would be able to attend religious services.  Mr. Goulsby claims a general right to practice religion and cites the "deliberate indifference" standard under the Eighth Amendment as the basis for his cause of action.

The right of inmates to religious freedom is found at 42 U.S.C. §§ 2000cc *et seq*., the "Religious Land Use and Institutionalized Persons Act of 2000 or "RLUIPA", *Green v. Solano County Jail*, 513 F.3d 982 (9th Cir. 2009).  "In any RLUIPA claim, we must begin by identifying the 'religious exercise' allegedly impinged upon.  Next, we must ask whether the prison regulation at issue 'substantially burdens' that religious exercise." *Id*. at 987.  RLUIPA defines 'religious exercise' to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *Id. Citing Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005).

"RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling governmental interest;' and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).  *See also Cutter v. Wilkinson*, 544 U.S. 704, 717 (2005); and *Warsoldier*, at

REPORT AND RECOMMENDATION- 12

994. *Id.* Group worship service is a form of "religious exercise" under the plain language of RLUIPA and an "outright ban" of worship services was a substantial burden on the exercise of religion. *Id.* at 988.

Here, there is no evidence of an "outright ban" of worship services and in fact, the jail had a policy of allowing inmates to attend worship services twice per week. However, the undisputed facts also show that Mr. Goulsby was not allowed to attend worship services, that at the very least Defendant Eaton knew Mr. Goulsby had not been permitted to attend religious services, that Defendant Eaton promised that Mr. Goulsby would be allowed to do so, but that Mr. Goulsby was never allowed to do so. Thus, construing the facts in the light most favorable to Mr. Goulsby, the undersigned concludes that from at least December 23, 2012 until he was released, Mr. Goulsby was not allowed to attend religious services two times per week and that this was a substantial burden on the exercise of his religion. Defendants provide no evidence to show that this burden was in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest. Therefore, it is recommended that defendants' motion for summary judgment on this issue be denied.

   **2.     Access to Legal Calls**

Mr. Goulsby claims he was denied access to make "legal calls," during the entire time he was in D-Unit. Dkt. 11, at ¶ 1.9. Mr. Goulsby fails to name any of the defendants or any other Thurston County Jail employee as having personally participated in this alleged deprivation. The declaration of Sgt. Dhuyvetter reflects that Mr. Goulsby had access to the telephone between December 2, 2012 and January 9, 2013, when Mr. Goulsby was in D-Unit, that he placed dozens of calls during that time period, and that the calls were made at all times of day, including during the typical working hours of 8:00 a.m. to 5:00 p.m. The evidence does not reflect who Mr.

REPORT AND RECOMMENDATION- 13

Goulsby chose to call during his access time, but the evidence does show that Mr. Goulsby was not denied phone access and he could certainly have contacted his attorney during any of the 54 telephone calls that he placed while in pre-trial confinement.

Mr. Goulsby has failed to set out specific material facts showing a genuine issue for trial on his telephone access claim and it is, therefore, recommended that defendants' motion for summary judgment on this claim be granted.

**C.     Due Process – Segregation/Classification**

Under the Due Process Clause, pretrial detainees have a right to be free from punishment and this includes a right to be free from jail conditions or restrictions that "amount to punishment." *Bell*, 441 U.S. at 535–37; *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (pretrial detainees have a substantive due process right against restrictions that amount to punishment). This right is violated if restrictions are "imposed for the purpose of punishment." *Bell*, 441 U.S. at 535. There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." *Id*. In such a circumstance, governmental restrictions are permissible. *United States v. Salerno*, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)

The segregated confinement of pretrial detainees, where that confinement amounts to punishment, must be accompanied by a due process hearing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir.1996). It is clear from the undisputed facts of the complaint that Mr. Goulsby was infracted and placed in "special housing/maximum security unit (D-Tank)." At his disciplinary hearing, he was found guilty and sentenced to 7 days on lockdown, which sentence was suspended for 30 days dependent on his remaining infraction free during the 30 day suspension. Mr. Goulsby does not appear to challenge his initial placement in D-Tank, his infraction, the

REPORT AND RECOMMENDATION- 14

disciplinary proceedings, or the process he received relating to those proceedings.  He takes issue, however, with being held in D-Tank for thirty days after his infraction hearing based on the "Unit Classification Decision" of Defendants Becker and Abercrombie.  Dkt. 11, at ¶ 1.5.  He alleges that he received no notice of the hearing, was given no opportunity to participate in any such decision, and received no written decision related to the hearing.

Defendants rely on *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (1986) for the proposition that placement of Mr. Goulsby in the D-Tank after being found guilty of the jail infraction is in and of itself not a constitutional violation as administrative segregation falls within the terms of confinement ordinarily contemplated by a "sentence."  Dkt. 19, p. 10.  However, this argument overlooks the fact that Mr. Goulsby was a pretrial detainee, not a convicted prisoner.  The argument also overlooks the fact that while Mr. Goulsby was found guilty of the infraction, the sentence was suspended and he was told he would be returned to the medium security unit.

Thus, while the facts support a conclusion that Mr. Goulsby's initial placement in D-Tank was not imposed as punishment for the crime that led to his pretrial detention, but as punishment for violation of jail rules, the same cannot be said for the additional thirty day confinement in D-Unit.  The unresolved issue, therefore, is whether the purpose and effect of the additional thirty day confinement in D-Unit was punishment for which Mr. Goulsby was entitled to due process of law.  Defendants provide no evidence of legitimate non-punitive reasons for Mr. Goulsby's extended confinement in D-Unit.  Therefore, the Court recommends that defendants' motion for summary judgment on this claim be denied.

//

//

REPORT AND RECOMMENDATION- 15

**CONCLUSION**

Based on the foregoing, the Court finds that Defendants' motion for summary judgment (Dkt. 19) be **GRANTED except as** plaintiff's claims that he was denied due process when he was held in special housing for 30 days following his infraction hearing and was denied access to religious services. All remaining claims should be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 29, 2016,** as noted in the caption.

**DATED** this 11th day of April, 2016.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 16